## TANNER *v.* STATE.

### Opinion delivered January 25, 1915.

1. BIGAMY—EVIDENCE—MARRIAGE CERTIFICATE.—In a prosecution for bigamy the testimony of the minister who performed the second marriage that he was duly authorized to perform the same, and that he did so, is competent, although he did not sign the certificate of marriage.

2. BIGAMY—EVIDENCE—JUSTICE OF PEACE—COMMISSION—PROOF.—In a prosecution for bigamy the authority of the justice of the peace who performed the first marriage may be proved by his oral testimony, instead of by the production of the commission issued by the Governor.

Appeal from Pike Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The proof was sufficient to show that Crump was a justice of the peace, authorized to, and did, perform the marriage ceremony between appellant and Eula Hamilton.

2. The testimony of the witness Taylor alone is sufficient to establish the fact of the second marriage and to justify the introduction of the marriage license. 112 Ark. 47.

KIRBY, J. Appellant brings this appeal from a conviction of the crime of bigamy, under the following indictment (formal parts omitted):

"The grand jury, in the name and by the authority of the State of Arkansas, accuse Green Tanner of the crime of bigamy, committed as follows, towit:

"The said Green Tanner, in Montgomery County and State aforesaid, on the 23d day of December, A. D. 1906, did marry one Eula Hamilton, and her, the said Eula Hamilton, then and there have for a wife, and the said Green Tanner afterward, and while so married to the said Eula Hamilton, as aforesaid, towit: on the 12th day of August, 1911, in the County of Pike and State of Arkansas, feloniously and unlawfully did marry and take as his wife one Katie Watterson, and to her, the said Katie Watterson, was then and there married, his former wife being then alive, against the peace and dignity of the State of Arkansas."

It appears from the testimony that appellant was married to Katie Watterson on August 11, 1911, at the home of her father in Pike County, who testified that the ceremony was performed by F. B. Taylor, a minister, who went about the country preaching, but witness had not seen his credentials and did not know whether he was an ordained minister and authorized to solemnize marriages.

Rev. Mr. Taylor testified that he married Green Tanner and Katie Watterson at her father's house and identified the marriage license and certificate, which was objected to because the certificate was not signed. The court admitted it upon this testimony that it was the marriage license presented to him, that he solemnized the marriage by authority thereof and then filled out the certificate, which was in his handwriting. He testified further, that he was a regularly ordained minister of the gospel, and had been for thirty years, authorized to perform marriage ceremonies, that his credentials were of record in Texas, Oklahoma, and in Pike County, Arkansas.

The marriage license between appellant and Eula Hamilton in Montgomery County was introduced in evidence and J. T. Crump testified that he was a justice of the peace of Montgomery County in the year 1906, and

married Green Tanner to Eula Hamilton in that county on the 23d or 24th of December, that year. He identified appellant as the man he married to Eula Hamilton and stated that she was still living in Black Springs in Montgomery County.

Appellant moved to exclude this testimony because there was no certificate or commission in evidence, showing that said Crump was a justice of the peace. He testified himself that he was, and the father of Eula Hamilton also testified that appellant was married to her at his home in Montgomery County by Jim Crump, who was a justice of the peace and that they lived together as man and wife after the marriage. That he knew Crump was a justice of the peace because he ran for the office; witness voted for him, he was declared elected and he had had some lawsuits before him, after his election as justice of the peace. It was also stated that Eula Hamilton had married a Mr. Hendricks in March, 1912.

Appellant did not testify, nor has he favored us with a brief in this cause.

(1) The testimony of the minister who married appellant to his second wife, stating that he had performed the ceremony, was competent whether he had signed the certificate of marriage or not. He stated that he was a regularly ordained minister of the gospel and his credentials were recorded in Texas, Oklahoma and Pike County, this State; that he recognized the license upon which he had made out the certificate and the certificate as the one filled out by him. This with his statement that he had performed the ceremony was sufficient to show the marriage, which could be proved without the exhibition of the license and the certificate of the person performing the ceremony attached.

(2) Neither did the court err in permitting the justice of the peace who solemnized the first marriage to prove his official capacity by his statement of it instead of by the production of the commission issued by the Governor. It is not disputed that appellant married Katie Watterson, while his first wife from whom he was not shown to have been divorced was living, and

there is no testimony in the record indicating even that a divorce had ever been procured from this marriage, unless it be the statement that the first wife had married Mr. Hendricks in 1912.

Since for aught the testimony shows to the contrary, her said marriage may have been after divorce procured since the bigamous marriage of appellant to Katie Watterson, but if her marriage to Hendricks was invalid because no divorce had been granted from appellant, that fact would not relieve him from the penalty of the law in any event.

We find no prejudicial error in the record and the judgment is affirmed.